UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MARK SMITH,

                        Plaintiff,

                - against -

DET. FAMIANO, Shield #32, Brooklyn North
Narcotics; P.O. ALLEVATO, Shield #23939,
Brooklyn North Narcotics,

                        Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-6535 (PKC) (RER)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Mark Smith ("Smith"), proceeding *pro se*, brings this action against Defendants

Detective James Famiano ("Famiano") and Detective Frank Allevato ("Allevato") (collectively,

"Defendants"), alleging violations of 42 U.S.C. § 1983 for false search and false arrest claims in

connection with incidents in February 2015 and November 2017.  Before the Court is Defendants'

motion for summary judgment.  For the reasons stated below, Defendants' motion for summary

judgment is denied in its entirety.

**BACKGROUND**

I.      **Relevant Facts[1]**

    A.      **February 5, 2015 Incident**

        1.     <u>First wave of officers respond to Plaintiff's shooting</u>

      In the late morning of February 5, 2015, Plaintiff was shot in his lower back in the lobby

of his apartment building, 223 Ten Eyck Walk, Brooklyn, New York.  (Defendants' Statement of

_____

    [1] Unless otherwise noted, a standalone citation to a party's 56.1 statement denotes that this Court has deemed the underlying factual allegation undisputed.  Any citation to a 56.1 statement incorporates by reference the documents cited therein; where relevant, however, the Court may cite directly to an underlying document.  Although Plaintiff did not file a Rule 56.1 Counterstatement that conforms to this district's local rules (*see* Pl.'s Statement of Undisputed

Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Defs.' 56.1 Statement"), Dkt. 55, ¶¶ 1, 3.)

Two of Plaintiff's neighbors, including Maribel Nieves, ran downstairs to assist upon hearing his

cries for help.  (*Id.* ¶ 4.)  One of Plaintiff's neighbors helped move Plaintiff from the lobby to the

stairs by lifting Plaintiff by his arms, and someone called 911.  (*Id.* ¶ 5.)

When the first set of uniformed police officers arrived, Plaintiff was leaned up against a

wall that led up the stairs to the first-floor apartments.  (*Id.* ¶¶ 7–8.)  Plaintiff informed the officers

that he lived in Apartment 1A.  (*Id.* ¶ 9.)  Apartment 1A is a unit on the first floor of the building,

at least five to six feet[2] beyond the flight of stairs Plaintiff was resting on.  (*Id.* ¶ 2.)  Pursuant to

fire safety code, the apartment doors in Plaintiff's building are spring-loading doors, which close

---

Facts Pursuant to Local Civil Rule 56.1(b) ("Pl.'s 56.1 Statement"), Dkt. 57-2), in light of
Plaintiff's *pro se* status, the Court overlooks this failure and examines the underlying factual
exhibits submitted by the parties.  *See Santagata v. DiGregorio*, No. 17-CV-3063 (PKC) (CLP),
2023 WL 2613606, at *1 (E.D.N.Y. Mar. 23, 2023) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d
62, 73 (2d Cir. 2001)).  Further, Plaintiff has provided his own factual account of the case and
attached relevant non-duplicative exhibits.  (*See generally* Pl.'s Opp. Br. and Exs., Dkt. 51);
*Thigpen v. Bd. of Trs. of Local 807 Labor-Mgmt. Pension Fund*, No. 18-CV-162 (PKC) (LB), 2019
WL 4756029, at *1 (E.D.N.Y. Sept. 29, 2019) (declining to deem defendants' 56.1 statement
admitted when plaintiff "provide[d] her own factual account of the case and attached numerous,
non-duplicative exhibits").  "A district court has broad discretion to determine whether to overlook
a party's failure to comply with local court rules."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d
Cir. 2001) (citations omitted).  "[W]hile a court is not required to consider what the parties fail to
point out in their Local 56.1 statements, it may in its discretion opt to conduct an assiduous review
of the record even where one of the parties has failed to file such a statement."  *Id.* (internal
quotation marks and citations omitted); *cf. Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373
F.3d 241, 242 (2d Cir. 2004) ("Even when a motion for summary judgment is unopposed, the
district court is not relieved of its duty to decide whether the movant is entitled to judgment as a
matter of law.").  Thus, the Court will "examine the record to determine whether there are any
triable issues of material fact, notwithstanding the fact that [Plaintiff] did not follow Local Civil
Rule 56.1."  *Cain v. Esthetique*, 182 F. Supp. 3d 54, 63 (S.D.N.Y. 2016).

[2] The Court notes that Plaintiff asserts that Apartment 1A is "approximately 10-12 feet
from the lobby door entrance."  (Pl.'s 56.1 Statement, Dkt. 57-2, ¶ 2.)  Thus, the distance between
the lobby and the apartment door is a disputed fact.

automatically unless propped open. (Pl.'s Opp. Br. and Exs., Dkt. 51, at ECF[3] 31; Aff. of Alfred

Havens, Dkt. 57-4, ¶ 10.) Plaintiff asserts that he repeatedly advised the officers not to enter his

apartment, the door of which was closed.[4] (Aff. of Maribel Nieves, Dkt. 57-3, ¶ 11 ("[Plaintiff],

who was still collapsed on the floor of the vestibule, repeatedly yelled for the police *not* to enter

his apartment.").)[5] Plaintiff was then transported to Kings County Hospital by ambulance. (Defs.'

56.1 Statement, Dkt. 55, ¶ 11.)

### 2.   Defendants Allevato and Famiano respond to the shooting

At some point during these events, Defendants Allevato and Famiano, both New York City

Police Department ("NYPD") officers assigned to the Brooklyn Narcotics squad, were notified of

the shooting inside 223 Ten Eyck Walk and were directed to respond. (*Id.* ¶ 12; Dep. of Frank

---

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing
system and not the document's internal pagination.

[4] Defendants dispute this assertion and argue that it is "not material" to the instant motion
(Defs.' Resp. to Pl.'s Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1(b) ("Defs.'
Resp. to Pl.'s 56.1 Statement"), Dkt. 59, ¶ 10). The Court disagrees. Whether Plaintiff's apartment
door was closed is a genuine issue of material fact and a dispositive factor in the Court's denial of
Defendant's motion for summary judgment. *See infra* Discussion Section I.

[5] Defendants also claim that Plaintiff's assertion is "not admissible because it contains
multiple levels of hearsay." (Defs.' Resp. to Pl.'s 56.1 Statement, Dkt. 59, ¶ 10.) Specifically, they
argue that "the cited evidence is an affidavit of Maribel Nieves providing statements she
purportedly heard Plaintiff make to the first responding police officers." (*Id.*) Defendants are
wrong. Maribel Nieves's affidavit itself falls squarely within the evidence that the Court can
properly consider in . . . a summary judgment motion. *See Major League Baseball Props., Inc. v.
Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) ("Where a summary judgment motion is supported
or opposed by affidavits, those 'affidavits shall be made on personal knowledge, shall set forth
such facts as would be admissible in evidence, and shall show affirmatively that the affiant is
competent to testify to the matters stated therein.'") (quoting Fed. R. Civ. P. 56(e)). Furthermore,
if Ms. Nieves were to testify at trial regarding Plaintiff's statements, his statements to the officers
would be admissible as non-hearsay, *i.e.*, statements not offered for their truth, and/or as exceptions
to the hearsay rule, *e.g.*, excited utterances or present sense impressions. *See, e.g.*, Fed. R. Evid.
803(1) and (2); *United States v. Carneglia*, 256 F.R.D. 384, 392 (E.D.N.Y. 2009) (describing
statements made to police an hour after a shooting as admissible under the excited utterance or
present sense impression hearsay exceptions).

Allevato, Dkt. 54-2, at ECF 8.)  By the time Defendants arrived at the scene, Smith had already

been removed.  (Defs.' 56.1 Statement, Dkt. 55, ¶ 14.)  According to Defendants, although Plaintiff

was no longer at the scene, EMT personnel and police officers from multiple precincts were

present.  (Dep. of Frank Allevato, Dkt. 54-2, ECF 10.)  Defendants claim that they observed a

"blood trail" immediately upon entering the lobby that led from "the first or second step right to

the front doorway of . . . the apartment."  (*Id.*)  Allevato claims that he followed the trail of blood

to Apartment 1A where the door was open and marijuana was in plain view on Plaintiff's table.

(Pl.'s Opp. Br. and Exs., Dkt. 51, ECF 34 ("Door was opened.  So soon as you get to the front

[building] door . . . you just follow the blood trail right through [Plaintiff's apartment] door.  Now,

I'm standing at his front door, and what you can see in this apartment . . . you look on a table there,

there w[ere] little marijuana roaches[.]").)

In opposition, Plaintiff denies the existence of a blood trail, asserting that there was only

blood in the lobby and stairs where he was shot—10 to 12 feet from his apartment door.  (*See* Pl.'s

Opp. Br. and Exs., Dkt. 51, at ECF 12; *id.* at ECF 31 ("[Plaintiff] served . . . [an] affidavit[] from

[an] upstairs neighbor whose son had taken a photo of what appeared to be blood on the stairs[.]").)

Further, Plaintiff asserts that the door to his apartment, which automatically closes, was not

propped open.  (*See* Pl.'s Opp. Br. and Exs., Dkt. 51, ECF 31 (Kings County Assistant District

Attorney ("ADA") explaining in a memorandum dismissing Plaintiff's indictment that "[t]he

People spoke to a Sergeant who responded to the shooting [and] did not recall whether the door

had been propped open . . . nor did [the state prosecutors] find any witnesses who could attest to

the door being propped open when the [Defendants] arrived and observed the location").)

### 3.   Defendants obtain search warrant for Apartment 1A

After leaving Apartment 1A, Defendant Allevato applied for a search warrant before the

Honorable Rosemarie Montalbano of Kings County Criminal Court.  (Defs.' 56.1 Statement, Dkt.

55, ¶¶ 16–17.)  Allevato informed Justice Montalbano in his affidavit that he had followed a trail of blood into Apartment 1A and observed over 30 bags of marijuana in the apartment.  (Aff. of Def. Allevato, Dkt. 54-3, at ECF 2 (attesting that "in response to a shooting" Allevato arrived at Plaintiff's building, and "[u]pon arrival, . . . observed a trail of blood on the outside steps of [Apartment 1A] . . . followed this trail of blood up several stairs . . . into [Apartment 1A]" where he then "observed more than thirty bags of what appeared . . . to be marihuana").)  In response to Allevato's affidavit, Justice Montalbano issued Search Warrant No. 17/15, finding probable cause to search Apartment 1A for marijuana, paraphernalia commonly used to process and package marijuana, and other related items.[6]  (Defs.' 56.1 Statement, Dkt. 55, ¶¶ 17–18.)

On the evening of February 5, 2015, NYPD officers executed the search warrant and recovered marijuana and controlled substances in pill form from Plaintiff's bedroom.  (*Id.* ¶¶ 19–20.)  As a result of the search, Plaintiff was arrested on charges of Criminal Possession of a Controlled Substance in the Third Degree, Criminal Possession of a Controlled Substance in the Fifth Degree, Criminal Possession of a Controlled Substance in the Seventh Degree, Criminal Possession of Marijuana in the Second Degree, and Criminal Use of Drug Paraphernalia.  (*Id.* ¶ 26.)

### 4.   State dismisses Plaintiff's indictment under *Franks v. Delaware*

On August 8, 2017, the Honorable William Miller, a Justice of the Kings County Supreme Court, granted Plaintiff a hearing under *Franks v. Delaware*[7] and *People v. Alfinito* to determine

---

[6] Although Defendant Famiano did not submit an affidavit to obtain the search warrant, Plaintiff alleges that Famiano "knowingly and willfully conspire[d] with [D]efendant Frank Allevato to secure a search warrant . . . by remaining silent as to sworn facts attested to in the search warrant affidavit" and that Famiano knew the search warrant was "based upon perjured statements of material fact to the warrant[-]issuing court."  (Am. Compl., Dkt. 20, at ECF 6–7.)

[7] *Franks v. Delaware* holds that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth,

whether there was actually a trail of blood leading to and into Plaintiff's apartment that gave the police probable cause to obtain the search warrant.  (Pl.'s 56.1 Statement, Dkt. 57-2, ¶ 18.)  On October 20, 2017, the Kings County District Attorney's Office issued a Dismissal Memorandum in Plaintiff's case, *People v. Smith*, Indictment No. 1174/15.  (*Id.* ¶ 19.)[8]

Less than two weeks after Plaintiff's indictment was dismissed, Defendant Allevato encountered Plaintiff in Brooklyn on November 1, 2017, and arrested him based on the events described below.

### B.    November 1, 2017 Incident

On November 1, 2017, Plaintiff was inside his car, parked in front of 196 Maujer Street in Brooklyn, New York.  (Defs.' 56.1 Statement, Dkt. 55, ¶ 27.)  Plaintiff had recently purchased the car.  (Dep. of Pl., Dkt. 54-1, at ECF 31.)  A temporary license plate was displayed in the car's rear window.  (Defs.' 56.1 Statement, Dkt. 55, ¶ 29.)

According to Defendant Allevato, he approached Plaintiff's car because he thought the car was missing a license plate and because Plaintiff was allegedly parked near a fire hydrant.  (Dep. of Frank Allevato, Dkt. 54-2, at ECF 16 (Allevato explaining he approached Plaintiff's car "[b]ecause . . . the plaintiff didn't have a license plate affixed to the rear of the vehicle where it

---

was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."  438 U.S. 154, 155–56 (1978).

[8] It appears based on the record before the Court that the District Attorney's Office voluntarily dismissed Plaintiff's indictment prior to Justice Miller's ruling on the *Franks* issue.  (*See* Dkt. 51 at ECF 31 (dismissing the indictment because "the central issue at bar in the *Franks* hearing *would be* whether the door was propped open or not, [and] it will be exceedingly difficult to prove definitively whether (and how) the door was propped open") (emphasis added).)  However, as discussed *infra*, the Dismissal Memorandum referenced a finding by the District Attorney's Office that Plaintiff's apartment door closed automatically.  (Pl.'s Opp. Br. and Exs., Dkt. 51, at ECF 31.)

was supposed to be affixed and it was parked on a fire hydrant.").)  In contrast, Plaintiff asserts that his temporary license plate was properly displayed in the car's rear window and that he was legally parked.  (Pl.'s 56.1 Statement, Dkt. 57-2, ¶¶ 20, 22)[9]

Defendant Allevato next alleges that he asked for Plaintiff's driver's license and vehicle registration, but that Plaintiff refused and was uncooperative.  (Dep. of Frank Allevato, Dkt. 54-2, at ECF 18.)  At that point, Allevato claims he "noticed right in the vehicle" in the driver's car door holder, "a switchblade knife and what [he] believed at that time was . . . [a] [Z]ip[]loc[] bag of PCP."  (Id.)  Allevato seized the gravity knife and the Ziploc bag, which contained marijuana, not PCP.  (Defs.' 56.1 Statement, Dkt. 55, ¶¶ 35–36.)  Plaintiff was arrested for Criminal Possession of a Weapon in the Third Degree, Criminal Possession of a Weapon in the Fourth Degree, Criminal Possession of Unstamped Cigarettes, Criminal Use of Drug Paraphernalia, Criminal Possession of a Controlled Substance in the Seventh Degree, Criminal Possession of Marijuana in the Fifth Degree, and Unlawful possession of Marijuana.  (Id. ¶ 37.)

In stark contrast to Allevato's narrative, Plaintiff asserts that Defendant Allevato and two other officers drove up to his car on November 1, 2017, and parked on the passenger side, blocking in Plaintiff and his vehicle.  (Dep. of Pl., Dkt. 54-1, at ECF 26.)  Allevato then approached Plaintiff and asked "how's your father?"[10]  (Id.)  Next, Allevato allegedly reached in through the driver's

---

[9] Although the Court cites only to Plaintiff's 56.1 statement for these assertions, whether Plaintiff was legally parked and legally displaying his temporary license plate are disputed facts. Further, the disputed facts are material because Defendants argue that they "had probable cause to arrest Plaintiff for . . . the improper display of the temporary license plate" and thus "[e]ven if the gravity knife and marihuana were not discovered on scene, they would have been inevitably discovered during [Plaintiff's arrest and subsequent] inventory search of the car."  (Defs.' Reply, Dkt. 58, at 8.)

[10] Plaintiff's father, Alfred Havens, was present in Apartment 1A during Defendants' search of the unit on February 5, 2015.  (Aff. of Alfred Havens, Dkt. 57-4, ¶¶ 2–4.)  Although this fact is not material to the issues in this motion, it could be relevant to the jury's determination of

side window, which was open, and unlocked Plaintiff's door.  (*Id.*; *see also* Pl.'s 56.1 Statement, Dkt. 57-2, ¶ 23.)[11]  Plaintiff concedes that he had a pocketknife and a bag of marijuana in his driver's side door, but insists that the items were hidden under a pack of cigarettes.  (Dep. of Pl., Dkt. 54-1, at ECF 26.)  Plaintiff further claims that Defendant Allevato removed the items from the driver's door in order to find the marijuana and gravity knife.  (Pl.'s 56.1 Statement, Dkt. 57-2, ¶ 25.)

## II.    Procedural History

Plaintiff filed his Complaint in this action on November 6, 2017.  (Dkt. 1.)  In his Complaint, Plaintiff alleges that Defendants Allevato and Famiano, in addition to Assistant District Attorney ("ADA") Joy Kieras and the City of New York, committed Section 1983 violations based on the February 2015 incident.  (*Id.*)  Plaintiff then filed an Amended Complaint alleging substantively similar claims.  (Dkt. 4.)  On June 18, 2018, the Court dismissed Plaintiff's claims against ADA Kieras and the City of New York, but allowed Plaintiff's false search claim against Defendants Allevato and Famiano regarding the February 2015 incident to go forward.  (Dkt. 5.)

On November 29, 2018, Plaintiff moved to add a Section 1983 false arrest claim regarding the February 2015 incident and false arrest and related "claims of perjury" regarding the November 2017 incident.  (Dkt. 15.)  The Honorable Ramon E. Reyes denied Plaintiff's request to add the 2015 false arrest claim, but allowed Plaintiff to add the 2017 false search and arrest claims.  (Dkt. 17.)  Accordingly, on July 26, 2019, Plaintiff filed a second Amended Complaint, adding Section

---

the facts and credibility at trial, since Defendant Allevato claims that he did not know who Plaintiff was at the time of the November 1, 2017 incident.  (Dep. of Frank Allevato, Dkt. 54-2, at ECF 18.)

[11]  Citations to Plaintiff's 56.1 Statement in this paragraph do not indicate that the Court finds them to be undisputed.

1983 claims against Defendant Allevato regarding the November 2017 incident.  (Dkt. 20, at ECF 8, 10.)  Defendants filed their motion for summary judgment on June 13, 2022.  (Dkts. 52–56, 58.)

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party.  *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).  Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial.  *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).  A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]."  *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (citation omitted; alteration in original).  In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (citation omitted).

In determining whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc.*, 542 F.3d at 309).  The Court also construes any disputed facts in the light most favorable to the

nonmoving party.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970).  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

When considering a dispositive motion made by or against a *pro se* litigant, the Court is mindful that a *pro se* party's pleadings must be "liberally construed" in favor of that party and are held to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) ("[The Second Circuit] liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest.") (internal citations omitted).  Nonetheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (citation omitted).

## DISCUSSION

Defendants move for summary judgment on Plaintiff's claims for: (1) false search regarding the February 2015 search warrant; and (2) false search and false arrest regarding the November 2017 search and arrest.  As discussed below, Defendants' motion falls woefully short of the standard required for prevailing on a motion for summary judgment.  Because genuine issues of material fact clearly remain with respect to both incidents, Defendants' summary judgment motion must be denied.

## I.   February 2015 Search Warrant: The Blood Trail and Whether Plaintiff's Apartment Door Was Open Are Genuine Issues of Material Fact

In Defendants' motion for summary judgment, they assert that the warrant authorizing the February 5, 2015 search of Apartment 1A is "presumptively valid" and "therefore, the entry into

and search of Apartment 1A was legally permissible and did not violate [P]laintiff's constitutional rights." (Defs.' Br., Dkt. 56, at 6–7.)  However, Defendants miss the point.  Defendants overlook the fact that Plaintiff "may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure."  *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003) (citations omitted).  Furthermore, "[w]here a[] [law enforcement] officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause . . . the shield of qualified immunity is lost."  *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994) (citations and quotation marks omitted).

Plaintiff must satisfy three conditions to survive Defendants' motion for summary judgment against his false search claim: (1) "[he] must [make] an offer of proof supporting specific allegations of deliberate or reckless misrepresentation, as required by *Franks*"; (2) "the alleged misrepresentations must be legally relevant to the probable cause determination"; and (3) "there must be a genuine issue of fact about whether the magistrate would have issued the warrant on the basis of 'corrected affidavits.'"  *Id.* at 574 (referring to *Franks v. Delaware*, 483 U.S. 154 (1978)).  The Court finds that Plaintiff has satisfied all three conditions.  Thus, Plaintiff's false search claim as to Defendants' 2015 search warrant survives the motion for summary judgment and Defendants have failed to establish that they are entitled to qualified immunity for this claim at this stage of the proceedings.  *See Chamberlain Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020) ("[Q]ualified immunity should be resolved at the earliest possible stage in litigation.") (citation and quotation marks omitted).

### A.    Plaintiff has offered proof supporting his allegations that Allevato made reckless misrepresentations in securing the February 2015 search warrant

Plaintiff asserts that Allevato made misrepresentations "with reckless disregard for the truth" regarding "two material elements in the application for a search warrant": (1) that there was

11

a trail of blood leading up to and into Plaintiff's apartment, and (2) that the door to Plaintiff's apartment was open, thereby "allow[ing] [D]efendants to see directly into [P]laintiff's apartment" and observe the marijuana in plain view.  (Pl.'s Opp. Br. and Exs., Dkt. 51, at ECF 11–12.)  Plaintiff provides proof supporting the falsity of both of these representations by Allevato.  First, Plaintiff submits an affidavit from his neighbor, Maribel Nieves, in which she attests "[t]here was *not* a trail of blood leading into [Plaintiff's] apartment.  (Aff. of Maribel Nieves, Dkt. 57-3, ¶ 13 (emphasis added).)  Ms. Nieves further explains that her son took a contemporaneous photo of the building lobby and hallway showing "clearly and accurately" "that there was no blood leading into [Plaintiff's] apartment."  (*Id.* ¶ 14.)  Second, Plaintiff also provides the District Attorney's Office memorandum dismissing his 2015 indictment.  (*See* Pl.'s Opp. Br. and Exs., Dkt. 51, at ECF 30–31.)  In the Dismissal Memorandum, ADA Kieras notes that "the People" have confirmed Plaintiff's apartment door "closes automatically unless propped open."  (*Id.* at ECF 31.)  And further, that the state "[did not] find any witnesses who could attest to the door being propped open when [Defendants] arrived and observed [Apartment 1A]" and that "it w[ould] be exceedingly difficult to prove definitively whether (and how) the door was propped open."  (*Id.*)[12]

As for whether Allevato's alleged misrepresentations were reckless, "recklessness may be inferred where the omitted [or misleading] information was critical to the probable cause determination[.]"  *Golino v. City of New Haven*, 950 F.2d 864, 871 (2d Cir. 1991).  In the next

---

[12] The Court notes that the Dismissal Memorandum itself or the statements therein might not be admissible at trial.  However, the memorandum acknowledges the existence of evidence regarding Plaintiff's apartment door being auto-closing and points out the absence of evidence that Plaintiff's door was open—both of which Plaintiff could seek to elicit, present, and/or argue at trial. *See Lewis v. Town of Waterford*, 239 F.R.D. 57, 60 (D. Conn. 2006) ("A party 'cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial.'") (ultimately quoting *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985)).

section, the Court finds that Allevato's purported false statements were material to Justice Montalbano's finding of probable cause.  Accordingly, Plaintiff has satisfied the first condition and offered proof showing that Defendant Allevato made reckless misrepresentations to Justice Montalbano about both the blood trail and the open apartment door in his search warrant affidavit. *See Velardi*, 40 F.3d at 574.

**B.    Allevato's alleged misrepresentations are material and there is a genuine dispute as to whether Justice Montalbano would have issued the warrant absent the misrepresentations**

Plaintiff has also satisfied the second and third conditions by showing that Defendant Allevato's misrepresentations were legally relevant to Justice Montalbano's probable cause determination and thus a genuine dispute exists as to whether the search warrant would have been issued absent the misrepresentations.  *See id.*  "To determine if the false information was necessary to the issuing judge's probable cause determination, *i.e.*, material, a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant."  *Awadallah*, 349 F.3d at 65 (citations and internal quotation marks omitted).  "If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate."  *Id.*

Here, Defendant Allevato asserted the following in his affidavit for the February 5, 2015 search warrant:

> Deponent [Allevato] states that on February 5, 2015, at approximately 12:45 p.m., [he] entered 223 Ten Eyck Walk . . . in response to a shooting.  Upon arrival, [Allevato] observed a trail of blood on the outside steps of the subject location. [Allevato] followed this trail of blood up several stairs to a landing an[d] into the subject location [Apartment 1A].  [Allevato] states that inside the subject location [he] observed more than thirty bags of what appeared to [him] to be marihuana.

(Aff. of Def. Allevato, Dkt. 54-3, at ECF 2.)  Defendants argue that neither the blood trail nor the open door were material for establishing probable cause.  (Defs.' Reply, Dkt. 58, at 5–6.)  Instead,

Defendants assert that it was solely Defendants' "observations of marihuana inside of the apartment [that] was the information material to establishing probable cause." (*Id.* at 5.) The Court disagrees.

If the Court applies the *Awadallah* analysis and disregards Allevato's statements about the trail of blood, all that would be left in his "corrected" affidavit is the naked claim that he observed more than thirty bags of marijuana *inside* Plaintiff's apartment. Without Allevato's representation that the blood trail led up to and inside Plaintiff's apartment and the implication that Allevato followed this trail through the *open* door of Plaintiff's apartment, Justice Montalbano would not have been able to find probable cause to issue the search warrant for the apartment because of the strong Fourth Amendment protections that attach to a person's home. *See Florida v. Jardines*, 569 U.S. 1, 6 (2013) ("[W]hen it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'") (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).[13] Thus, crucial to the February 2015 search warrant's issuance was Allevato's showing of *how* he was able to *lawfully* observe marijuana *inside* Plaintiff's home.

In sum, the Court finds that whether the blood trail existed and whether Plaintiff's apartment door was propped open present genuine issues of material fact. Accordingly, the Court denies Defendants' motion for summary judgment regarding Plaintiff's claim that the February 5, 2015 search was unlawful. Moreover, the Court cannot find that Defendants are entitled to

---

[13] Although Defendants do not make this argument, the Court has considered whether probable cause to search Plaintiff's apartment would have existed if only Defendant Allevato's allegedly false statement about the trail of blood was excised. Given that Allevato undisputedly was in the hallway outside Plaintiff's apartment, it could be argued that regardless of how or why he got there, he still would have "plain-viewed" the marijuana inside the apartment. However, this argument too fails because of the genuine dispute over whether Plaintiff's automatically-closing apartment door was propped open at the time Defendants arrived there.

qualified immunity regarding this claim at this time.  *See Chamberlain Estate of Chamberlain*, 960 F.3d at 110 ("[Q]ualified immunity should be resolved at the earliest possible stage in litigation.") (citation and quotation marks omitted).  Indeed, at trial, if the jury finds that Defendants knew or had reason to know that they materially misled Justice Montalbano, that qualified immunity will be foreclosed.  *See Velardi*, 40 F.3d at 573 ("Where a[] [law enforcement] officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause . . . the shield of qualified immunity is lost.").

## II.   Genuine Issues of Material Fact Remain in Determining the Legality of the November 2017 Search and Arrest

Defendants attempt to justify Plaintiff's 2017 search and arrest in two ways.  First, they assert Defendant Allevato had "reasonable suspicion to conduct the initial car stop based on . . . the improper display of the temporary license plate" and "had probable cause to arrest [P]laintiff" upon observing the alleged traffic infraction.  (Defs.' Br., Dkt. 56, at 8.)  Second, Defendants argue "there was additional probable cause to arrest [P]laintiff because in plain view, [] Allevato observed a gravity knife and quantity of marijuana in the driver's side door[.]"  (*Id.* at 9.)

Although the Court agrees that, based on the undisputed facts, Defendant Allevato had reasonable suspicion to conduct the initial car stop, the Court finds that his actions thereafter raise genuine issues of material fact as to the lawfulness of the resulting search of Plaintiff's vehicle and his arrest.  Thus, the Court denies Defendants' motion for summary judgment as to Plaintiff's November 2017 false search and arrest claims.

### A.   Allevato had reasonable suspicion to initially approach Plaintiff's car

Defendant Allevato reasonably conducted the initial car stop when he did not see a license plate near the rear bumper of Plaintiff's car, because that could have been a violation of Vehicle

and Traffic Law Section 402(1).[14]  *See Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.")  Although it is undisputed that Allevato saw the temporary plate in Plaintiff's rear window at some point during the stop (*see* Dep. of Frank Allevato, Dkt. 54-2, at ECF 17 (Plaintiff: "There was no plate in the window? There was nothing?" Allevato: "[There] was a plate on the window."); Defs.' Br., Dkt. 56, at 9 ("[T]he record undisputedly demonstrates that the license plate was inside of the car in the rear window.")), this fact in itself does not make Allevato's decision to continue with the car stop unreasonable.  In *United States v. Jenkins*, the officers stopped a car because "the officers reasonably believed that the SUV lacked license plates" but became aware "shortly after the SUV was stopped . . . that there had in fact been no traffic violation" because they saw that the car had a temporary license plate in the rear window once they drew closer.  452 F.3d 207, 212–13 (2d Cir. 2006).  The Second Circuit ruled that it was reasonable for the officers to continue approaching the car, even after realizing their mistake.  *Id.* at 214 (explaining that the officers did not violate the Fourth Amendment "merely by approaching the SUV because it would have been reasonable for them to inform the SUV's occupants of what had happened").  "The touchstone for the Fourth Amendment is reasonableness, and it is reasonable for officers who have stopped a vehicle on the basis of a reasonable factual mistake to approach the vehicle and apprise the vehicle's occupants of the situation." *Id.* at 214 (internal citation and quotation marks omitted).

---

[14] Sections 402(1)(a) and 402(1)(b) collectively require motor vehicles to have permanent license plates affixed to the rear of the car that are "clean and in a condition so as to be easily readable and shall not be covered by glass or any plastic material."  N.Y. VEH. & TRAF. LAW §§ 402(1)(a)–(b).

However, the *Jenkins* court warned that after a mistaken traffic stop, "officers [can]not detain[] the [car] for longer than necessary to briefly explain to the occupants the reason for the stop." *Id.* at 214 n.10.  Thus, Defendants cannot rely on Allevato's initial mistaken belief regarding Plaintiff's lack of license plate to justify the continued search and arrest.  Rather, Defendants must show one of two things—either that Allevato had probable cause to arrest Plaintiff even after seeing the temporary license plate—or that Allevato had "an independent basis" for continuing his search after realizing he had stopped Plaintiff's car by mistake.  *See Jenkins*, 452 F.3d at 213–14 (finding officers could continue conducting a search after their initial reasonable suspicion was "dispelled" because "they immediately detected an independent basis for continuing to detain the [car]"—namely the smell of marijuana).

### B.    Whether Allevato had probable cause to arrest Plaintiff remains a genuine issue of material fact

#### 1.    It remains disputed whether Allevato believed that Plaintiff had committed a traffic violation

Defendants assert that Allevato "had probable cause to arrest [P]laintiff for Vehicle and Traffic Law §§ 402(1)(a) and 402(1)(b)."  (Defs.' Br., Dkt. 56, at 9.)  Frankly, the Court cannot fathom how Defendants can make this argument in good faith.  They are either ignoring the clear evidence in the record (including their own)—or they are unreasonably mistaken about the law— conceivably both.  As discussed above, Section 402(1) applies to the display of *permanent* license plates, but Plaintiff's car only had a *temporary* license plate—which is permitted under New York law—because it was recently purchased.  (Pl.'s Opp. Br. and Exs., Dkt. 51, at ECF 13, 31.)  Vehicle and Traffic Law Section 403-a governs temporary license plates and states that "[t]he commissioner may promulgate regulations to provide for temporary indicia of registration which shall permit a person to operate or park a motor vehicle . . . without number plates."  N.Y. VEH. & TRAF. LAW § 403-a.  In fact, "[a]ny person . . . who has complied" with Section 403-a "shall not

17

be deemed . . . in violation of . . . [402(1)]." *Id.* The regulations then expressly allow for "[a] motorist operating a motor vehicle" who "is waiting for the issuance of, an original or duplicate plate(s)" to "*place[] a temporary substitute . . . in the rear window*[.]" N.Y. Comp. Codes R. & Regs. tit. 15, § 21.2(c) (emphasis added). Thus, Plaintiff's display of his temporary license plate in his rear window on February 5, 2015 did not violate any New York traffic law. (*See* Defs.' Br., Dkt. 56, at 9 ("[T]he record undisputedly demonstrates that the license plate was inside of the car in the rear window.").)

Indeed, Defendant Allevato conceded during his deposition that it was legal for a temporary license plate to be displayed in a rear window and acknowledged that Plaintiff's plate was displayed there.[15] (*See* Dep. of Frank Allevato, Dkt. 54-2, at ECF 17 (Plaintiff: "So if there's no plate directly affixed to a vehicle and there's a temporary plate that's issued by the car dealership, is that illegal?" Allevato: "*It's not illegal if it could be seen*, but at the time and everything else that—when we stopped the plaintiff—there was no . . . plate that we could see affixed to the rear of the vehicle." Plaintiff: "There was no plate in the window? There was nothing?" Allevato: "[There] was a plate on the window.") (emphasis added).) In fact, Defendants'

---

[15] Moreover, Defendants do not argue or offer any evidence that Allevato thought the temporary license was invalid for any reason, such as fake, expired, or for a different vehicle.

own photographic evidence shows that Plaintiff's temporary plate was clearly visible in the rear window of the car at the time of Plaintiff's arrest:



(Dkt. 54-12, at ECF 2.)

Defendants argue that under New York law, "[e]ven if an arrest for a non-criminal traffic infraction does violate the Fourth Amendment, a reasonable New York police officer ha[s] reason to believe that such an arrest is lawful." *Glasgow v. Beary*, 2 F. Supp. 3d 419, 424 (E.D.N.Y. 2014). However, this is an argument about an arresting officer's entitlement to qualified immunity, and assumes that Plaintiff actually committed a traffic infraction, or at least that Allevato had probable cause to believe so. *See id*. at 425 (holding that because of the "uncertain status of the law" as to whether an officer can arrest a person for a traffic infraction, "[i]f defendant arrested plaintiff after observing him commit a violation of the New York traffic code, he would be entitled to qualified immunity on plaintiff's Fourth Amendment claim"). But, as already discussed, the undisputed evidence belies both conclusions. Here, Plaintiff's properly displayed temporary license plate was simply not a traffic infraction. And the Court does not find that reasonable

officers could disagree on whether there was probable cause to arrest Plaintiff for a violation of Vehicle and Traffic Law Section 402(1)—or Section 403-a. *See Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (holding that "[a]rguable probable cause to arrest exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.") (citations and quotation marks omitted).  Thus, Allevato plainly is not entitled to qualified immunity for arresting Plaintiff without probable cause for a traffic infraction.

If instead of arguing for qualified immunity, Defendants are maintaining that Allevato was mistaken about the law governing temporary license plates and believed that Plaintiff was in violation of that law at the time of the 2017 incident, the Court would not find this mistake to be objectively reasonable.  "The test for whether an officer's mistake of law was objectively reasonable 'is not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity.'" *United States v. Diaz*, 854 F.3d 197, 204 (2d Cir. 2017) (quoting *Heien v. North Carolina*, 574 U.S. 54, 67 (2014)).  In fact, an officer's mistake of law is only reasonable "when the law at issue is so doubtful in construction that a reasonable judge could agree with the officer's view."  *Id*. (cleaned up).  Here, the law governing temporary license plates could not be any clearer: anyone who "is waiting for the issuance of" a license plate can "place[] a temporary substitute . . . in the rear window[.]"  N.Y. COMP. CODES R. & REGS. tit. 15, § 21.2(c). Indeed, anyone who has seen a car dealership or a new car on the road knows this.  Thus, it is not objectively reasonable that Defendant Allevato, a trained NYPD officer, did not know that a temporary license plate could be legally displayed in a rear car window.  *See Heien*, 574 U.S. at 67 ("[A]n officer can gain no Fourth Amendment advantage through sloppy[]study of the laws he is duty-bound to enforce.").

Thus, this Court finds that there is a genuine issue of fact as to whether Allevato believed

that Plaintiff was illegally displaying his license plate and thus had probable cause to arrest—one

that decidedly leans in Plaintiff's favor.[16]

        2.      The parties dispute whether Plaintiff's contraband was in plain view

Lastly, Defendants assert that once Defendant Allevato approached Plaintiff's car, "there

was additional probable cause to arrest [P]laintiff because in plain view, Det. Allevato observed a

gravity knife and quantity of marijuana in the driver's side door[.]"  (Defs.' Br., Dkt. 56, at 9.)

However, Plaintiff disputes this assertion and instead claims that the contraband was hidden under

a pack of cigarettes.  (Dep. of Pl., Dkt. 54-1, at ECF 26.)  Plaintiff further alleges that Allevato

forcibly reached through the open driver-side window, unlocked Plaintiff's door, and removed the

items in the inside door handle to reveal the contraband.  (Pl.'s 56.1 Statement, Dkt. 57-2, ¶¶ 23,

25.)  Defendants submitted a photograph that was purportedly taken at the time of Plaintiff's arrest,

showing the contraband in plain view on the driver's side door.  (Dkt. 54-13, at ECF 2.)  However,

Plaintiff asserts that Defendant Allevato fabricated the evidence and instead conducted the

November 2017 search and arrest in "retaliation for the dismissal of the criminal action initiated

by [Defendants] on February 5, 2015 and the subsequent [] investigation into his actions[.]"  (Pl.'s

---

[16] For the same reasons, the Court also rejects Defendants' argument under the inevitable discovery doctrine.  Defendants raise this doctrine as a last resort, arguing that even if the marijuana and gravity knife were not in Allevato's plain view, he had probable cause to arrest Plaintiff based on the improperly displayed license plate and thus would have inevitably discovered the contraband.  (Defs.' Br., Dkt. 56, at 11 ("[T]he contraband would have been inevitably discovered as part of an inventory search. . . . Here, there was probable cause for [P]laintiff's arrest on November 1, 2017 as soon as Detective Allevato observed the improperly displayed rear license plate.").)  As already explained, Defendants' argument fails because it remains disputed whether Allevato believed that Plaintiff had committed a traffic infraction, given that Allevato saw Plaintiff's temporary license displayed in the rear window of his car, in compliance with Vehicle and Traffic Law Section 403-a.  Thus, because the undisputed facts do not show that Defendant Allevato had probable cause to arrest Plaintiff for a traffic infraction, the Court rejects that discovery of the contraband in Plaintiff's car was inevitable.

Opp. Br. and Exs., Dkt. 51, at ECF 16.)  Thus, there remains a stark, genuine dispute over a material fact, *i.e.*, whether Plaintiff's contraband was in plain view, that precludes summary judgment.

In sum, the Court denies Defendants' motion for summary judgment as to Plaintiff's false search and false arrest claims regarding Plaintiff's November 2017 arrest.

### C.    Defendants are not entitled to qualified immunity

Lastly, Defendants argue that Allevato is entitled to qualified immunity for Plaintiff's November 1, 2017 arrest because it was "objectively reasonable for Detective Allevato to believe that he had probable cause to arrest [P]laintiff for violation of Vehicle and Traffic Law [Section 402(1)]." (Defs.' Br., Dkt. 56, at 17.)  Even if probable cause is lacking in a given case, an officer "will still be entitled to qualified immunity . . . if he can establish that there was 'arguable probable cause' to arrest." *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013) (citation omitted).

"Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'"  *Escalera*, 361 F.3d at 743 (quoting *Golino*, 950 F.2d at 870).  "The test is not toothless, however: 'If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer.'"  *Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012) (quoting *Jenkins*, 478 F.3d at 87); *see also Jenkins*, 478 F.3d at 87 ("'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause.").  Here, the Court has already determined that Defendants have not established arguable probable cause to arrest Plaintiff under Section 402(1) because there was no evidence that Plaintiff had violated that law and Allevato conceded as much in his deposition.  *See supra* Discussion Section II.B.1.

Furthermore, "[a]lthough immunity is usually an issue for the court, where the facts are disputed, 'jury consideration is normally required.'" *Douglas v. City of New York*, 595 F. Supp. 2d 333, 341 (quoting *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994)); *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers or may require a trial if the facts are in dispute.") (citations omitted).  Here, whether Defendant Allevato had arguable probable cause to arrest and whether he is entitled to qualified immunity depends heavily on whether a jury credits his or Plaintiff's version of the November 2017 car search.

Accordingly, Defendants' motion for summary judgment on the basis of qualified immunity is denied.[17]

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is denied in its entirety.  Plaintiff's claims against Defendants Allevato and Famiano for false search as to the February 2015 search warrant and false search and false arrest as to his November 2017 search and arrest will proceed to trial.  The parties shall submit a Joint Pretrial Order within thirty (30) days of this Memorandum and Order.  A pretrial conference will be scheduled thereafter.

SO ORDERED.

/s/ *Pamela K. Chen*
Pamela K. Chen
United States District Judge

---

[17] As noted above, Defendants' claim of qualified immunity as to the February 2015 search warrant is denied because Plaintiff has plausibly alleged that Defendants relied on misrepresentations to secure the warrant. *See Velardi*, 40 F.3d at 573 ("Where an officer knows, or has reason to know, that he has materially mislead a magistrate on the basis for a finding of probable cause, . . . the shield of qualified immunity is lost.").

Dated: March 30, 2023
         Brooklyn, New York